922 F.2d 837
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Kathleen L. WEBSTER, Plaintiff-Appellant,
v.
SECRETARY OF the ARMY, Defendant-Appellee.
 No. 90-1421.
 United States Court of Appeals, Fourth Circuit.
 Submitted Aug. 29, 1990.
Decided Jan. 9, 1991.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, District Judge. (CA-89-814-A)
 Joel P. Bennett, Washington, D.C., for appellant.
 Henry E. Hudson, United States Attorney, Karen Kimball, Special Assistant United States Attorney, Alexandria, V., for appellee.
 E.D.Va.
 AFFIRMED.
 Before PHILLIPS, WILKINS and NIEMEYER, Circuit Judges.
 PER CURIAM:
 
 
 1
 Kathleen Webster, a former government employee who was discharged by the Department of the Army, appeals from the dismissal of her age discrimination claim against the Army and its Foreign Science and Technology Center (FSTC). She assigns as error a number of evidentiary rulings and the court's ultimate finding against her on the merits. Finding no error, we affirm.
 
 
 2
 * Webster, a physicist, was hired by FSTC in 1982 to analyze laser research and development and the deployment of lasers by foreign nationals and all communist countries. At the time of her hiring by John Kosiewicz, who supervised Webster and other intelligence analysts, she was 56 years old. Her job required collection and analysis of technical data on lasers and, most critically, the preparation of reports that presented and analyzed the data in a clear, concise manner so that the information was readable and usable by federal defense and intelligence authorities.
 
 
 3
 Webster was notified early in her career at FSTC that she and her supervisors did not see eye-to-eye on writing style and presentation. In 1985, Kosiewicz informed Webster that a large writing project she was working on fell below Army standards. Plaintiff contends that the problem was the overly broad scope of the project and that this problem was cured when Kosiewicz's supervisor agreed with Webster that the writing should be split into two volumes. Despite that, on December 16, 1985, Webster received her first Notice of Unacceptable Performance from Kosiewicz and Lyman Hall, another supervisor, based on her performance deficiencies. Moreover, her Employee Performance Appraisal, covering May 1, 1985 through April 30, 1986, and dated June 10, 1986, states the following: "Mrs. Webster's 1985 study was initially rejected as not meeting expected branch standards. It required extensive, time consuming rework before being made acceptable." The appraisal added: "This problem was attributable partially to a breadth of data too extensive for Mrs. Webster to cover in a single study, and partially to her style of writing which required a great deal of clarification." J.A. at 87.
 
 
 4
 Both her first and second level supervisors attempted to counsel Webster to change her writing to meet their standards. Webster was enrolled in a technical writing course and was given close supervision. But, despite this effort, she was unable to produce a major report after October 1986. Webster was given a second Notice of Unacceptable Performance on October 8, 1987. She was also given a Plan for Improvement, which stretched out the deadlines Webster faced in order to give her more time to produce publishable reports. The Plan for Improvement noted that "the performance problem has been identified to be Mrs. Webster's inability to communicate clearly in writing...." J.A. at 134.
 
 
 5
 After Webster had been under three years of intense supervisory effort, her supervisors reached the conclusion that she was unable to meet their performance standards. As a result, she was given an unsatisfactory rating on her review ending March 30, 1988. Upon the recommendation of her first-level supervisor, Lyman Hall, and her second-level supervisor, Kosiewicz, Webster was then dismissed.
 
 
 6
 At the time of her dismissal, Webster, who had worked for the FSTC for over five years, was 61 years old. She had left substantial work incomplete when she was dismissed. This work was given to one of her co-workers, Bill Alcott, who at this time was in his early 60s. He had to undertake a total rewrite of Webster's major writing assignment.
 
 
 7
 Webster filed suit against the Army under the Age Discrimination in Employment Act. After discovery, the government moved for summary judgment. The district court held a hearing on the motion, and then denied summary judgment. The case went to a bench trial and, at the conclusion of Webster's evidence, the government moved for dismissal pursuant to Fed.R.Civ.P. 41(b). The district court granted that motion. This appeal followed.
 
 II
 
 8
 We address two evidentiary rulings challenged by Webster. She first contends that the district court committed error by promising but not issuing written findings of fact and conclusions of law. She also assigns error to the district court's decision to exclude one of her witnesses and a number of her exhibits. We take these in turn.
 
 
 9
 * Federal Rule of Civil Procedure 41(b) states that "[i]f the Court renders judgment on the merits against the plaintiff, the Court shall make findings as provided in Rule 52(a)." Rule 41(b) is plain enough, and Webster asserts that the court failed to conform with the rule because it did not issue written findings of fact and conclusions of law as it stated it would. Webster's argument fails, however, because a district court is only held to the requirements of the federal rules, and Rule 52(a) does not require written findings and conclusions:
 
 
 10
 In all actions tried upon the facts without a jury ... the court shall find the facts specially and state separately its conclusions of law thereon.... It will be sufficient if the findings of fact and conclusions of law are stated orally and recorded in open court following the close of the evidence....
 
 
 11
 The judge stated in plain terms and in open court its findings of fact and conclusions of law in dismissing Webster's claim. That suffices to meet the requirements of Rules 41(b) and 52(a).
 
 B
 
 12
 Webster next contends that the court improperly excluded her only live witness and certain of her exhibits. The district court did not permit the witness to testify because the witness had not been identified during discovery as someone having relevant information, and because he had not been identified as an expert witness. (The court concluded, after an exchange with Webster's counsel, that the witness was going to be proffered as an expert to testify on the competence of Webster's writing.) Rule 37 gives courts wide discretion to exclude evidence or witnesses that were not provided during discovery, or to impose other sanctions, in order to avoid unfair surprise and unnecessary delay. See generally Basch v. Westinghouse Elec. Corp., 777 F.2d 165, 174 (4th Cir.1985) (upholding sanctions against attorney for failing to provide completely accurate discovery information). Webster's witness here would have been a surprise expert witness, one the government understandably may not have been prepared either to cross-examine or counter with their own expert. For this reason, we cannot say that the district court abused its discretion by excluding the testimony.
 
 
 13
 For the same basic reasons, we also conclude that the district court did not abuse its discretion in refusing to admit a number of plaintiff's exhibits. One reason for this exclusion was that some of the documents were not produced in discovery. Though the exhibits were produced for the pre-trial conference, which was held approximately two months before trial, we cannot say that the district court abused its discretion in keeping out exhibits 52, 53, and 55. These exhibits were not produced during discovery and the trial court was well within its Rule 37(b) prerogative to keep them out. In addition, the other grounds asserted by the court for not admitting exhibits 38, 44, and 45 further convince us that the court did not abuse its discretion. Exhibit 38 was kept out because it was an incomplete document that was not relevant on its face. Exhibits 44 and 45 were not admitted because they were not relevant to the question of whether Webster met the requirements of her position. For all of these reasons, we find no error in the rulings of the district court.
 
 III
 
 14
 After hearing plaintiff's evidence, which is captured in relevant part in our statement of facts, the district court granted the government's Rule 41(b) motion to dismiss. The district court stated from the bench that "there simply isn't the evidence here to support the plaintiff's claim.... And there just simply isn't any evidence in this case, taking the plaintiff's evidence in its best light, that she was terminated for any other reason other than her performance. There is just no indication of age discrimination in this case." This ultimate finding is not clearly erroneous.
 
 
 15
 To establish a claim of age discrimination a plaintiff may either present direct evidence of age discrimination, which was not attempted here, or satisfy the familiar three-step scheme of proof borrowed from the Title VII context. See Goldberg v. B. Green & Co., 836 F.2d 845, 849 (4th Cir.1988) (adapting Title VII Burdine test to age discrimination claims); Ballinger v. North Carolina Agric. Extension Serv., 815 F.2d 1001, 1006 (4th Cir.1987) (same).
 
 
 16
 In the first step of this proof scheme, a plaintiff must make out a prima facie case of discrimination, failing which the claim may be dismissed on that basis. The plaintiff's proof here failed to meet that threshold requirement. The elements of a prima facie ADEA discharge claim are (1) that the claimant is in the protected age group; (2) that she was discharged; (3) that at the time of her discharge she was meeting her employer's legitimate performance expectations; and (4) that following her discharge she was replaced by another person. See Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 238-39 (4th Cir.1982).
 
 
 17
 We think the district court's finding that Webster's discharge was not motivated by age discrimination may be supported on either of two equally valid bases. First, that considered in the light most favorable to the claimant, the evidence fails to establish that at the time of her discharge she was performing up to the legitimate expectations of her employer. See Lovelace, 681 F.2d at 239. It is not seriously disputed that she was failing to meet those expectations, as the several unsatisfactory ratings and the prolonged remedial efforts demonstrate.
 
 
 18
 Beyond this, assuming that somehow the evidence made out a prima facie case, it clearly failed to prove that the stated reason for the discharge--unsatisfactory performance--was pretextual. There is too much evidence of early and continued employer dissatisfaction with her job performance to permit the inference that her discharge would not have occurred but for her age, that "age was a determining factor" in the discharge. Id. at 238, 245.
 
 
 19
 We agree with the district court's implicit conclusion here that in the complete absence of any direct evidence of age discrimination (after all, Webster's "replacement" was age 63), a finding of discrimination here could only have been made on the basis of the rankest sort of speculation by the trier of fact.
 
 
 20
 AFFIRMED.